IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Respondent, | No. CR S-02-0048 MCE DAD P | |
| vs. | | |
| ROBERTO RIOS VIZCARRA, | | |
| Movant. | FINDINGS AND RECOMMENDATIONS | |

Movant has filed a motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255.  Therein, movant claims that he received ineffective assistance from both his trial and appellate counsel.  In opposing the motion for relief, respondent argues that movant's claims are without merit.  Movant has filed a traverse.

Having considered all the papers filed by the parties and the record in this action, for the reasons set forth below, the court will recommend that the motion be denied.

**PROCEDURAL HISTORY**

On January 25, 2002, a criminal complaint was filed in this court alleging that movant imported and conspired to import controlled substances into the United States and that he laundered money to promote and carry on the importation of those controlled substances in

/////

violation of 21 U.S.C. §§ 952, 963 and 18 U.S.C. §§ 1956(a)(1)(A)(I), 1956(a)(2)(A).[1]  (Doc. No. 1.)  Movant's initial appearance before the court took place that same day, counsel was appointed to represent him and a preliminary hearing was scheduled for February 8, 2002.  (Doc. No. 2.)  On February 7, 2002, a federal grand jury for the Eastern District of California indicted movant on those same charges.  (Doc. No. 10.)  On February 8, 2002, movant was arraigned on that indictment.  (Doc. No. 11.)

On May 2, 2002, a superseding indictment was returned, charging movant with conspiracy to distribute heroin and methamphetamine in violation of 21 U.S.C. §§ 841, 846, and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h).[2]  (Doc. No. 19.)  Movant was arraigned on the superseding indictment on May 21, 2002.  (Doc. No. 20.)  On September 3, 2002, at movant's request, his appointed counsel was relieved and new counsel was appointed to represent him.  (Doc. No. 24.)  On September 25, 2003, the government filed an information alleging that movant had suffered a prior felony conviction for a drug related offense.  (Doc. No. 36.)

Movant's trial commenced on October 8, 2003.  (Doc. No. 48.)  On October 23, 2003, a jury found movant guilty on all counts.  (Doc. No. 60.)  On February 24, 2004, movant appeared before the court and was sentenced to imprisonment in the custody of the U.S. Bureau of Prisons for 240 months.[3]  (Doc. No. 84.)

Movant filed an appeal from his judgment of conviction in the Ninth Circuit Court of Appeals on February 26, 2004.  (Doc. No. 85.)  On June 10, 2005, that court affirmed the judgment, but remanded the matter to this court for re-sentencing proceedings consistent with the

---

[1] Movant's brother, Jaime Rios Vizcarra, was also named as a co-defendant in that complaint. (Doc. No. 1.) Jaime Vizcarra was also tried with movant.

[2] That indictment also added additional counts against movant's brother, Jaime Vizcarra and named a third party, Genaro Aro Arteaga, as a co-defendant. (Doc. No. 19.)

[3] Specifically, movant was sentenced to a 240-month term of imprisonment on Count I and a concurrent 235-month term of imprisonment on Count II.

1  decision in United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) (en banc), and to consider
2  whether movant's sentence would have been materially different in light of the United States
3  Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).  (Doc. No. 124.)  On
4  January 10, 2006, the assigned district judge affirmed the sentence originally imposed and ruled
5  that his previously issued judgment would remain in effect.  (Doc. No. 142.)  On January 18,
6  2006, movant again appealed.  (Doc. No. 143.)  On December 11, 2006, the Ninth Circuit filed a
7  memorandum decision affirming the district court's judgment and sentence.  (Doc. No. 158.)

On February 22, 2008, movant filed on his own behalf a § 2255 motion with this court seeking to vacate, set aside, or correct his sentence.  (Doc. No. 162 (hereinafter "Motion").)  Respondent filed a response opposing the motion on July 25, 2008.  (Doc. No. 173 (hereinafter "Response").)  Movant filed a traverse on August 28, 2008.  (Doc. No. 177 (herein after "Reply").)

## FACTUAL BACKGROUND

On March 3, 1999, agents for the United States Customs Service arrested Jack Perkett, Frank Sandoval, and Travis Phillips at the Calexico California Port of Entry for attempting to smuggle approximately 2.8 pounds of heroin and 9.4 pounds of methamphetamine across the border in a 1989 Jeep Wagoneer.[4]  (Reporter's Transcript ("RT") at 53-54, 77-83.)  After interviewing Travis Phillips and Jack Perkett, agents learned that the group had intended to transport the drugs to Stockton, California.  (Id. at 81-82.)

After the arrests, IRS agents identified approximately 320 money transfers, using either Western Union or MoneyGram, totaling approximately $612,000 from Stockton to a small group of individuals in Mexico.  (Id. at 713-15.)  Movant was among that small group of individuals, with money transfers to him exceeding $261,000.  (Id. at 720.)

/////

---

[4] Sandoval's fiancee, Bobbi Jean Harrison, was also in the vehicle and was arrested by federal agents.  (RT at 191.)

3

At movant's trial, Sandoval testified that on March 2, 1999, Jaime Rios Vizcarra asked him to transport the Jeep Wagoneer to Mexico. (Id. at 195-96.) Jaime Rios Vizcarra then picked Sandoval up in the Wagoneer and the two traveled to Perkett's house, where Perkett and Phillips were waiting. (Id. at 197-99.) Sandoval, Perkett and Phillips then drove the Wagoneer to Mexico. (Id. at 199.)

Upon arriving in Mexicali, Mexico Sandoval took the Wagoneer to movant's home. (Id. at 200.) Movant then dropped Sandoval off at a hotel and kept the vehicle for several hours. (Id. at 201.) Movant eventually returned the Wagoneer to Sandoval, Perkett and Phillips at a McDonald's. (Id. at 202.) Sandoval, Perkett and Phillips departed in the Wagoneer for the border. (Id. at 203.) When the group attempted to cross the border from Mexico into the United States, Sandoval knew there were drugs in the vehicle. (Id.) Sandoval had transported drugs across the border at Jaime Rios Vizcarra's request on three or four prior occasions. (Id. at 205.)

Christina Cloward testified that she was involved in the "day-to-day operations" of "selling drugs" at movant's request. (Id. at 4001-07.) Cloward testified that she wired money to movant in Mexico. (Id. at 413-16.) Veronica LeFebre also testified that she wired money to Mexico at movant's request. (Id. at 537.)

## MOVANT'S CLAIMS

Movant alleges that he received ineffective assistance from his trial counsel. In this regard, he argues that his counsel was ineffective because she failed to object to the introduction of prior testimony by Perkett, after Perkett refused to testify on behalf of the government. (Motion at 19-17.[5]) Movant asserts that his trial counsel was also ineffective for failing to "fully inform" movant that he could have received "a sentence as low as 121 months by simply pleading guilty and demonstrating remorse." (Id. at 23-27.) Movant also argues that his trial counsel was ineffective for failing to object to movant's sentence because that sentence was

---

[5] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

based "on a multi-object conspiracy," whereas the jury delivered a general verdict that did not specify which offense was the target of the conspiracy. (Id. at 27-30.) Finally, movant argues that his appellate counsel was ineffective for failing to raise a "Lopez" claim on appeal, arguing that a prior conviction used to enhance his sentence was "based on his prior simple possession" which was not a felony under the Controlled Substance Act. (Id. at 30-33.)

**LEGAL STANDARD**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 filed in the court which imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution of laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).

In reviewing a motion brought pursuant to § 2255, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. See also United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003). However, to be entitled to an evidentiary hearing the movant must provide specific factual allegations which, if true, state a claim on which relief under § 2255 could be granted. United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003); United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

**ANALYSIS**

As noted above, all of movant's claims involve allegations that he recieved ineffective assistance of counsel. Below, the court will address the legal standards governing such claims before turning to each of movant's specific claims.

I. Legal Standards Governing Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v.

5

1  Richardson, 397 U.S. 759, 771 n. 14 (1970)); United States v. Span, 75 F.3d 1383, 1386 (9th Cir.
2  1996).  Thus, under the Sixth Amendment a defendant is entitled to "a reasonably competent
3  attorney, whose advice is within the range of competence demanded of attorneys in criminal
4  cases."  United States v. Cronic, 466 U.S. 648, 655 (1984) (internal quotations omitted).  The
5  purpose of the effective assistance of counsel guarantee is "to ensure that criminal defendants
6  receive a fair trial."  Strickland, 466 U.S. at 689.  Toward that end, the Sixth Amendment
7  requires that an accused be assisted by an attorney "'who plays the role necessary to ensure that
8  the trial is fair.'"  Frazer v. United States, 18 F.3d 778, 782 (9th Cir. 1994) (quoting Strickland,
9  466 U.S. at 685).

10         To support a claim of ineffective assistance of counsel, a movant seeking relief
11  under § 2255 must first show that, considering all the circumstances, counsel's performance fell
12  below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  Movant must
13  therefore identify the acts or omissions that are alleged not to have been the result of reasonable
14  professional judgment.  Id. at 690.  The court must then determine whether, in light of all the
15  circumstances, the identified acts or omissions were outside the wide range of professional
16  competent assistance.  Id.; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  "There is a strong
17  presumption that counsel's performance falls within the 'wide range of professional assistance.'"
18  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There
19  is in addition a strong presumption that counsel "exercised acceptable professional judgment in
20  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing
21  Strickland, 466 U.S. at 689).

22         Second, movant must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.
23  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional
24  errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable
25  probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also
26  Williams v. Taylor, 529 U.S. 362, 391 (2000); Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

2000). A reviewing court "'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

A. Perkett's Testimony

Movant argues that after the Assistant United States Attorney called Jack Perkett, a "key prosecution witness," to testify, Perkett was "recalcitrant, non-responsive and extremely disoriented." (Motion at 20.) In this regard, Perkett testified that he did not remember the events leading to his arrest, and he did not remember movant or his co-defendant. (Id.) Perkett was eventually declared to be a hostile witness, "which thereby permitted the prosecution to use direct examination leading questions on its own witness." (Id.) Movant asserts that those questions concerned Perkett's confession and his prior testimony from Sandoval's trial, and were "otherwise objectionable" since they incriminated movant. (Id. at 21.) According to movant, after direct examination concluded, movant was not permitted to cross-examine Perkett "but for counsel's . . . failing to object to the introduction of said damag[ing] statements which implicated [movant] in the crime." (Id.)

The record establishes that at movant's trial, the prosecutor called Jack Perkett to testify. (RT at 352.) After answering some initial background questions, Perkett was asked if there was anybody in the courtroom he recognized. (Id.) Perkett answered no. (Id.) Shortly thereafter the prosecutor was granted permission to treat Perkett as a hostile witness so that she could be permitted to pose leading questions to the witness. (Id. at 354.) In response to further questioning, Perkett continued to deny that he knew movant or his co-defendant, that he had ever purchased drugs from movant and, in general, claimed memory loss due to the abuse of drugs and alcohol. (Id. at 354-59.) Perkett also denied that he was threatened on the way to court or that he was fearful of testifying. (Id. at 357.)

1   Perkett also denied taking a bus from Stockton, with a ticket purchased by
2   movant's co-defendant, to Mexicali to meet with movant. (Id. at 358.) Perkett then denied
3   remembering meeting with the Assistant United States Attorney just two days earlier. (Id. at
4   360.) When asked if the prosecutor could refresh Perkett's memory, Perkett stated, "You can't
5   refresh my memory." (Id.) The prosecutor then asked if Perkett remembered asking for a
6   sentence reduction in exchange for his testimony and if he remembered asking the prosecutor
7   "What if you asked me a bunch of questions, and I just said no." (Id. at 361-62.) Perkett replied
8   that he did not recall that exchange. (Id. at 362.)

9   Perkett then testified that he did not remember being a passenger in the Jeep
10  Wagoneer when the vehicle was driven from Stockton to Mexico. (Id. at 366.) Perkett testified
11  that he did, however, remember getting arrested in that vehicle while coming back from Mexico,
12  along with Sandoval and Phillips, but denied meeting movant while in Mexico. (Id. at 367-68.)
13  Perkett also denied previously telling the prosecutor that he had transported drugs from Mexico
14  to Stockton for movant and his co-defendant. (Id. at 371.)

15  After the lunch recess Perkett's counsel advised the court that Perkett indicated
16  that he would not answer any additional questions. (Id. at 373.) The jury was then brought into
17  the courtroom and Perkett's questioning resumed. (Id. at 377.) After Perkett refused to answer
18  the next question, and refused the court's order to answer the question, Perkett was cited for
19  contempt of court and was removed from the courtroom. (Id. at 377-79.)

20  Movant claims that his trial counsel "abandoned [her] client at a critical stage of
21  the proceedings and affirmatively aided the prosecutor in her efforts to persuade the jury that
22  [movant] was extremely involved in the conspiracy." (Motion at 23.) Movant argues that once
23  his trial counsel:

24  > failed to object at trial [to] the introduction of testimonial
      statements . . . which incriminated [movant] in the crime without
25    having the opportunity to cross-examine the government's witness,
      [she] ceased to function as defense counsel.

26  /////

(Id. at 22.)  The record, however, belies movant's argument in this regard.

No "testimonial statements" attributed to Perkett were entered into evidence at movant's trial.  It is true that the prosecutor asked Perkett if he had previously "testified differently" at a "trial in San Diego" at which time he had admitted that he purchased and transported drugs for movant's co-defendant.  (Id. at 355-56.)  Perkett merely answered that he might have.  (Id.)  Such testimony, however, is not the same as allowing the introduction of "testimonial statements."  In any event, because Perkett was a hostile witness the prosecutor was allowed to ask him leading questions.  Movant does not identify any basis upon which his trial counsel could have objected to this line of questioning or to any specific questions posed to the witness, other than his bare assertion that the questions were "otherwise objectionable as [they] incriminate[ed] [movant] within the crime."[6]  Movant has thus failed to show that his trial counsel's performance fell below an objective standard of reasonableness.  Moreover, even assuming arguendo that his trial counsel's performance was deficient, movant's claim of ineffective assistance of counsel would still fail because he is unable to establish any prejudice flowing from his counsel's performance.

After Perkett was ordered to the holding tank, counsel for movant's co-defendant requested a sidebar conference.  (Id. at 379.)  At the sidebar, counsel for movant's co-defendant requested a mistrial arguing:

> It's our feeling that the jury has been tainted by this witness and cannot be rehabilitated. We think that regardless of what occurs with this witness, whether [the prosecutor] was able to ask him questions or not, based on his performance this morning and his attitude this afternoon, I think the jury has been fully tainted, and, in fact, may have been to the benefit of the prosecution - was to the benefit of the prosecution because it appeared to us, obviously, that he had a whole lot of knowledge, which he was not willing to testify to.

(Id.)  Movant's trial counsel joined in that request adding as follows:

---

[6] Movant's counsel could not have known at that time that Perkett would eventually be held in contempt by the court and would be unavailable for cross-examination.

9

> Also because of that, we don't have any opportunity to cross-examine. Because we can't cross-examine the statements. And I think the other problem is that the jury may think that the witness was threatened. I mean we can't really address that.

(Id. at 380.)

The assigned district judge denied the defense motion for a mistrial but did order Perkett's testimony stricken its entirety, agreed to later instruct the jury specifically on the matter and then did instruct the jury as follows:

> Ladies and gentlemen, earlier this morning we had a witness, Mr. Perkett, who was called to testify. As you will recall, [the prosecutor] began to ask a series of questions. Very quickly into that time period the court declared him to be a hostile witness even though the government actually called him as their own witness.
>
> As you have just seen, he has refused to answer the most recent questions and has indicated to the Court that he is not going to answer any more questions that are propounded to him. Accordingly, as you've also heard, I've cited him for contempt of court based upon his failure to follow my direct order. As such, he will not be available for further testimony. As such, also, the defense will not be able to cross-examine him.
>
> Accordingly, I am now going to strike the entirety of the questions and the answers that were asked of Mr. Perkett both this morning and this afternoon. As I instructed you at the beginning of the trial, if at any time that court orders that a particular portion of testimony be stricken, you are to totally disregard that testimony and/or the questions that were asked to elicit that testimony. I'm going to instruct you further that once you begin your deliberations, the issue of that stricken testimony is not to enter into your deliberations in any way nor is it to be discussed or considered by any of you. That will conclude the instruction I will give you at this time.

(Id. at 381-82.)[7]

Thus the entirety of Perkett's testimony was stricken from the record, the jury was ordered to totally disregard the answers given by him as well as the questions posed, and the jury

---

[7] Prior to the jury's deliberations the trial judge instructed the jury that "[t]estimony that has been excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered." (RT at 910.)

was specifically instructed that the stricken testimony was not to be considered in any way during their deliberations.  A jury is presumed to have obeyed the court's instructions.  <u>Zafiro v. United States</u>, 506 U.S. 534, 540 (1993); <u>Taylor v. Sisto</u>, 606 F.3d 622, 626 (9th Cir. 2010).

Furthermore, the evidence of movant's guilt, outside of Perkett's testimony, was substantial.  Sandoval testified that movant's co-defendant had recruited him to transport drugs from Mexico to Stockton on multiple occasions, including on March 2, 1999.  Sandoval testified that prior to the discovery of drugs in the Jeep Wagoneer on March 3, 1999, movant had possession of the vehicle for several hours.  Cloward testified that at sometime she was involved in the "day-to-day operations" of "selling drugs" at movant's request.  Evidence was introduced at trial that Cloward and LeFebre also wired money to individuals in Mexico, including movant, at movant's request.  IRS agents identified money transfers to movant totaling in excess of $261,000.

Presented with this evidence, even if movant's counsel had somehow prevented Perkett from testifying at all, movant has failed to show that there is a reasonable probability that the result of his trial would have been different.  Movant has therefore failed to demonstrate any prejudice flowing from the alleged ineffective performance of his trial counsel.

Accordingly, for the reasons stated above, movant is not entitled to relief under 28 U.S.C. § 2255 with respect to this aspect of his claim of ineffective assistance of trial counsel.

B.  <u>Inadequate Advice Concerning Alternatives to Trial</u>

Movant next asserts that his trial counsel was ineffective for failing to advise him of "all facts relevant to the determination [of] whether to plead guilty or not to guilty and proceed to trial."  (Motion at 23.)  In this regard, movant claims that his trial counsel did not advise him that he could plead guilty without a plea agreement, thereby preventing "the government from enhancing his mandatory minimum sentence of 20 years."  (<u>Id.</u> at 24.)  Movant argues that had he plead guilty prior to the government filing an information alleging his prior conviction and had he demonstrated remorse, he could have received a sentence of only 121 months imprisonment.

11

1  (Id.)

2    Movant claims his trial counsel did not advise him of these facts and was
3 therefore ineffective. (Id.) As a result movant "believed that he had nothing to lose by
4 proceeding to trial." (Id. at 25.) Movant argues that he was prejudiced by this ineffectiveness
5 because "absent said performance, there is a reasonable probability that [he] would have pleaded
6 guilty in an open plea" prior to the government's filing of an information alleging his prior
7 conviction. (Id. at 26.)

8    Respondent rebuts movant's claim by submitting a declaration of movant's trial
9 counsel, attorney Shari Rusk. Attorney Rusk states that she was appointed to represent movant
10 on or about September 3, 2002, replacing movant's prior appointed counsel. (Response, Decl.
11 Rusk at 1.) According to attorney Rusk, at that time she "explained the Guidelines pertinent to
12 [movant's] case and how that would affect any penalty he would receive." (Id.) Attorney Rusk
13 declares that approximately four months prior to movant's trial, the government provided her
14 with a certified copy of movant's prior felony conviction for drug trafficking. (Id. at 1-2.)
15 Attorney Rusk reviewed that document with movant and researched the issue. (Id. at 2.)
16 Attorney Rusk declares that she informed movant that if he proceeded to trial, the government
17 would file an information alleging his prior felony drug trafficking conviction, and that if he were
18 found guilty, he would therefore receive a mandatory minimum sentence of 20 years, regardless
19 of his sentencing guideline calculation. (Id.)

20    Attorney Rusk declares that she discussed every plea offer made by the
21 government with movant. (Id.) She states that some of those offers required movant to
22 cooperate with the government, but others did not. (Id.) Attorney Rusk declares that a plea offer
23 was made to movant by the government that would have resulted in him receiving a sentence of
24 between 12 and 14 years imprisonment without movant's cooperation. (Id.)

25 /////

26 /////

According to attorney Rusk:

> In light of the mandatory minimum sentence of 20 years faced by [movant] and the strength of the evidence against him, I advised him to accept the government's plea offer (with a projected sentence of between 12 and 14 years) since he did not want to cooperate with the government.

Attorney Rusk declares that despite her recommendation, movant "was never interested in accepting any plea offer made by the government." (Id.)

According to attorney Rusk the plea offers made by the government were "package deals" requiring both defendants to agree to plead guilty. (Id.) Attorney Rusk declares that movant always had the option of pleading guilty without a plea agreement, even though it would have resulted in a sentence greater than what the government was willing to recommend in the plea offers, but movant "never expressed any interest in pleading straight up." (Id.)

Attorney Rusk also states that she advised movant about the acceptance of responsibility and how it was applied under the Guidelines. (Id.) Attorney Rusk declares:

> I told him that he could receive a maximum reduction of three offense levels for acceptance of responsibility if he did so at an early stage where the government would not have to prepare for trial, and where the government made a motion for the third level reduction. I told him that if he entered a guilty plea, the government would not file the information charging his prior drug trafficking conviction, and he would likely receive a sentence of between 12 and 14 years, depending upon his criminal history.

(Id. at 2-3.) According to attorney Rusk, in this regard as well movant "expressed no interest in entering a guilty plea." (Id. at 3.)

Movant responds to his attorney's declaration by arguing that it is "irrelevant that petitioner may have received a better sentence had he accepted the proposed plea agreement" because he "was never going to provide information against anybody." (Reply at 5.) Movant asserts that respondent has essentially "conceded that 'an open plea would have resulted in a sentence of 188 months.'" (Id. at 6 (quoting Response at 11-12.)) Movant argues that because of his trial counsel's ineffectiveness he "arguably received a sentence of 52 months greater than

13

1  what he would have received had he entered an open plea" before the government filed the
2  information. (Id.)
3        Assuming arguendo that his trial counsel failed to inform him of his ability to
4  plead guilty absent a plea agreement and thereby provided him with ineffective assistance, in
5  order to prevail on this claim movant must still show that there is a reasonable probability that,
6  but for his counsel's unprofessional errors, the result of the proceeding would have been
7  different. Here, though movant disputes attorney Rusk's claim that she advised him of his
8  "options of going to trial and not going to trial," and that movant "never expressed any interest in
9  pleading straight up," he does not refute his trial counsel's declaration that the government
10 offered him a plea agreement that would have resulted in a sentence of between 12 and 14 years.
11 While movant repeatedly stated that he would never accept any plea offer made to him by the
12 government because he refused to cooperate, his trial counsel has declared that this plea offer did
13 not require movant to cooperate with the government. Movant has not disputed his trial
14 counsel's declaration in that regard. Having failed to dispute that point, it is simply implausible
15 that movant would have agreed to plead guilty to all charges withour a plea agreement for a
16 sentence of greater than 15 years, when he refused a plea offer that would have exposed him to a
17 maximum potential sentence of 14 years without any requirement that he cooperate with the
18 government.
19       As such, movant has failed to show that there is a reasonable probability that, but
20 for his counsel's unprofessional errors, the result of the proceeding would have been different.
21 Accordingly, movant is not entitled to relief under 28 U.S.C. § 2255 with respect to this aspect of
22 his claim of ineffective assistance of his trial counsel.
23     C. <u>Failure to Object at Sentencing</u>
24       Movant asserts that the jury's finding of his guilt as to the conspiracy charges "did
25 not establish which of these . . . offenses were the objects of the conspiracy." (Mot. at 28.) He
26 claims that because there was arguably sufficient evidence to convict him on each count and

because "there was no special verdict form provided, we only know that the jury found [movant] guilty of conspiring to violate section 841(a)(1), . . . section 1956(a)(2)(A), or both." (Id. at 29.) Movant contends that the jury "returned a general verdict" and that his trial counsel was ineffective for failing to object when movant was sentenced "to the higher maximum penalty based upon [the] drug trafficking offense as to Count One." (Reply at 8-9.)

As noted above, to support a claim of ineffective assistance of counsel, movant must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. "[T]he Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context.  Consequently, there is no clearly established law in this context." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1244 (9th Cir. 2005). Under any standard, however, this aspect of movant's ineffective assistance claim lacks merit.

The "Special Verdict Form" form used by the jury at movant's trial read in relevant part as follows:

> We the jury, find [movant]:
>
> VI. As to Count One, conspiracy to distribute more than one kilogram of heroin in violation of Title 21, United States Code, Section 846 and 841(a)(1): Guilty
>
> VII. As to Count One, conspiracy to distribute more than 500 grams of methamphetamine in violation of Title 21, United States Code, Section 846 and 841(a)(1): Guilty
>
> VIII. As to Count Two, conspiracy to launder monetary instruments in violation of Title 18, United States Code, Section 1956(h): Guilty

(RT at 935; Doc. No. 61.)[8]

/////

---

[8] The special verdict form, which can not be recreated here in its entirety, allowed the jury to place a check mark next to either "Guilty," or "Not-Guilty," for each inquiry as set forth above. The jury in movant's case placed a check next to "Guilty" with respect to each count and inquiry in question. (Doc. No. 61.)

It is therefore apparent that movant's jury returned a special verdict, specifying that they found him guilty of conspiracy to distribute more than one kilogram of heroin, conspiracy to distribute more than 500 grams of methamphetamine, and conspiracy to launder monetary instruments. Any objection by movant's trial counsel to his client's sentence on the grounds that it was improper because the jury returned a "general verdict" would have therefore been unsupported by the record, futile and meritless. An attorney's failure to make a meritless objection or motion does not constitute ineffectI've assistance of counsel. Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)). See also Rhoades v. Henry, 596 F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 1154 (2010) (counsel's failure to object to testimony on hearsay grounds not ineffective where objection would have been properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

Under the circumstances presented here, movant's trial counsel was not deficient for failing to argue that movant's sentence was not supported by the verdict returned by the jury. Accordingly, movant is not entitled to relief under 28 U.S.C. § 2255 with respect to this aspect of his claim of ineffective assistance of counsel.

D. Ineffective Assistance Appellate Counsel[9]

Movant claims that his appellate counsel was ineffective for failing to raise a claim based on the decision in Lopez v. Gonzalez, 549 U.S. 47 (2006), which was issued by the United States Supreme Court while his direct appeal was pending. (Mot. at 30-31.) Movant

---

[9] Unfortunately, respondent has failed to address this claim. In the future, the undersigned intends to require respondent to answer such ignored claims or to issue an order to show cause why sanctions should not be imposed for respondent's failure to properly respond to the claims raised in the § 2255 motion.

argues that, as a result of the holding in Lopez, his prior conviction should have exposed him only to a ten-year minimum mandatory sentence instead of a twenty-year minimum mandatory term. (Id. at 31.) Movant argues that his appellate counsel was therefore ineffective in failing to raise this issue on appeal. (Id. at 31-33.)

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n. 4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, movant must show that, but for appellate counsel's errors, he probably would have prevailed on appeal. Id. at 1434 n. 9.

In Lopez, the petitioner was convicted under state law of aiding an abetting another person's possession of cocaine which, under state law, was the same as mere possession. 549 U.S. at 51-53. After his release from confinement, the Immigration and Naturalization Service began removal proceedings against petitioner based, in part, on the contention that he had been convicted of an aggravated felony offense. (Id. at 51.) The United States Supreme Court held in that context "that a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if proscribes conduct punishable as a felony under that federal

law." 549 U.S. at 60. The court noted that simple possession of cocaine was not a felony under the federal Controlled Substances Act. (Id. at 53.) It is now clear that the Court's holding in Lopez applies in both the immigration and criminal sentencing contexts. United States v. Figueroa-Ocampo, 494 F.3d 1211, 1216 (9th Cir. 2007).

In Figueroa-Ocampo, upon conviction for being a deported alien found in the United States in violation of 8 U.S.C. § 1326, the defendant was challenging an eight-point increase to the calculation of his base offense level under the advisory U.S. Sentencing Guidelines for a prior felony conviction he had suffered for simple possession of a controlled substance. 494 F.3d at 1213. The district court added eight points to the base offense level because the Sentencing Guidelines treated possession of a controlled substance as an "aggravated felony." (Id.) Defendant argued on appeal that his simple possession conviction should not be considered an "aggravated felony" because, though a felony under state law, the offense was a misdemeanor under the federal Controlled Substances Act. The Ninth Circuit agreed, holding that under Lopez, the defendant's prior state conviction for simple possession was not an "aggravated felony" and therefore the increase in his base offense level based upon that prior conviction was in error. (Id. at 1216.)

However, the applicability of the twenty-year minimum mandatory term in movant's case was not based on whether or not he had been previously convicted of an "aggravated felony." Instead, movant's twenty-year minimum mandatory term was mandated mandatory by 21 U.S.C. § 841 because movant had suffered a prior conviction for a felony drug offense. In this regard, on September 23, 2005, the prosecution filed an information pursuant to 21 U.S.C. § 851(a), alleging that movant had previously been convicted of felony drug offense within the meaning of 21 U.S.C. § 841(b)(1)(A)[10], specifically violations of California Health & Safety Code §§ 11351 and 11378. (Doc. No. 36.) Title 21 U.S.C. § 841(b)(1)(A) states:

---

[10] Title 21 U.S.C. § 841 was amended in 2006, after movant's sentencing. The court's analysis is based upon the version of the statute in effect at the time movant was sentenced.

18

> If any person commits [a violation of § 841(a)(1)] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment . . .

As noted above, movant was convicted in this case on two counts of violating § 841(a)(1). Because movant was convicted of violating § 841(a)(1) after a "prior conviction for a felony drug offense" had become final, he was subject to the mandatory 20-year minimum term called for under 21 U.S.C. § 841(b)(1)(A).

Moreover, unlike the defendants in Lopez and Figueroa-Ocampo, whose state convictions were for simple possession, movant's prior state convictions were for possession or purchase of a controlled substance for sale (CAL. HEALTH & SAFETY CODE § 11351) and possession of a controlled substance for sale (CAL. HEALTH & SAFETY CODE § 11378). The possession of a controlled substance for sale is a felony offense under federal law. 21 U.S.C. § 841; see also United States v. Sandoval-Venegas, 292 F.2d 1101, 1107 (9th Cir. 2002) ("California's possession for sale closely mirrors the federal statute that criminalizes possession with intent to distribute.").

Thus, had movant's appellate counsel raised a challenge to movant's sentence based on the holding in Lopez, that argument would have been rejected as meritless. Of course, movant's appellate counsel had no obligation to raise a meritless issue on appeal. Strickland, 466 U.S. at 687-88. Movant has therefore failed to demonstrate that his appellate counsel rendered ineffective assistance. Accordingly, he is not entitled to relief under 28 U.S.C. § 2255 with respect to his claim of ineffective assistance of appellate counsel.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that movant's February 22, 2008 motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 162) be denied.

1	These findings and recommendations are submitted to the United States District
2	Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-
3	one days after being served with these findings and recommendations, any party may file written
4	objections with the court and serve a copy on all parties.  Such a document should be captioned
5	"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6	shall be served and filed within seven days after service of the objections.  Failure to file
7	objections within the specified time may waive the right to appeal the District Court's order.
8	Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.
9	1991).  In any objections he elects to file, petitioner may address whether a certificate of
10	appealability should issue in the event he elects to file an appeal from the judgment in this case.
11	See Rule 11, Federal Rules Governing Section 2255 Cases (the district court must issue or deny a
12	certificate of appealability when it enters a final order adverse to the applicant).
13	DATED: October 8, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
vizcarra.R.48.2255